Exhibit
2.
40-75

1                          FARLEY

2    moments ago that the distance between where

3    the inmate was waiting for the examination

4    and the place where the examination took

5    place on the occasions that you were

6    working at Rose M. Singer at that clinic

7    was about a distance of five feet away?

8          A.    Yes.  Give or take a foot.

9          Q.    When an inmate was being

10   examined at Rose M. Singer, are you able to

11   see into the cubicle where the examination

12   is being conducted?

13         A.    Um, me personally?

14         Q.    Yes.

15         A.    No.

16         Q.    When you were assigned to the

17   clinic at Rose M. Singer on the occasions

18   that you were so assigned, do you recall

19   how many doctors you would see on the tour

20   that day?

21         A.    No.

22         Q.    Do you recall how many nurses

23   you would see on a typical tour when you

24   were assigned to the clinic at Rose M.

25   Singer?

1               FARLEY

2        A.    Two or three.

3        Q.    So, two or three nurses, but

4   you don't know how many doctors; correct?

5        A.    Yes.

6        Q.    And were those nurses males or

7   females?

8        A.    Females.

9        Q.    Did you ever receive any

10  training from the Department of Corrections

11  concerning an officer being present when an

12  inmate is being examined by a doctor at the

13  Rose M. Singer center?

14       A.    No.

15       Q.    And it's your testimony that

16  you've never been present when a female

17  inmate is being examined by a doctor at the

18  Rose M. Singer center; correct?

19       A.    Correct.

20            MR. BROWN:  I ask that this

21            picture be marked as Plaintiff's

22            Exhibit 1.

23            (Plaintiff's Exhibit 1 was

24            marked for identification, as of this

25            date.)

1                    FARLEY

2        Q.     Have you ever seen her

3    signature before?

4        A.     Yes.

5               MR. BROWN:   I'm going to ask

6               that Bates stamped number 4 also

7               provided by the defendants be marked

8               as Plaintiff's Exhibit 2 at this

9               time.   It's the discharge checklist.

10              (Plaintiff's Exhibit 2 was

11              marked for identification, as of this

12              date.)

13       Q.     And I'm going to show this to

14   the witness at this time, and I will ask

15   you to take a look at the signatures on the

16   bottom.   Officer, have you had an

17   opportunity to examine the signatures at

18   the bottom of Plaintiff's Exhibit 2?

19       A.     Yes.

20       Q.     And do you recognize those

21   signatures on Plaintiff's Exhibit 2?

22       A.     I recognize the top signature.

23       Q.     And whose signature do you

24   recognize that to be?

25       A.     Captain Carr.

1                    FARLEY
2    Plaintiff's Exhibit 2, again.  I'm going to
3    ask you to take a look at the signature
4    underneath Captain Carr's signature and ask
5    you again if you recognize that signature.
6        A.    I still can't really make it
7    out.  I mean, this one.  The second where
8    he printed kind of looks like it may say
9    Johnson, but the actual signature --
10       Q.    That's fine.
11             Can you explain for the record
12   what sort of training you would receive if
13   an inmate complained to you about the
14   conduct of a doctor at the Rose M. Singer
15   center?  What would you do?
16       A.    It would be considered an
17   incident.
18       Q.    And what would your duties
19   entail if that were to happen?
20       A.    I would have to fill out an
21   incident report.  I would have to get
22   voluntary inmate state.  I would also have
23   to notify my area captain.  And if they had
24   any injuries, I would have to also fill out
25   an injury report.

<pre>
 1                      FARLEY
 2         A.    No, I don't recall.
 3         Q.    Do you recall if you had to
 4    testify in connection with those -- with
 5    either of those incidents?
 6         A.    No.
 7         Q.    On October 19 of 2009, do you
 8    recall any inmate complaining to you about
 9    being sexually assaulted by any doctor at
10    Rose M. Singer?
11         A.    No.
12         Q.    No, you don't recall or no, it
13    didn't happen?
14         A.    No, I don't recall.
15         Q.    And it's also your testimony
16    that you never received any training in
17    connection with what sort of incident has
18    to be reported when an inmate is
19    complaining about a member of the
20    Department of Corrections?
21         A.    Correct.
22         Q.    Are any male Department of
23    Corrections personnel ever assigned to the
24    clinic at Rose M. Singer?
25         A.    Yes.
</pre>

1                     FARLEY

2   examined?

3        A.    Yes.

4        Q.    If an inmate were examined by a

5   physician and then left the area to go to

6   the lab, let's say to get some blood work

7   and then was called back by the doctor to

8   be examined again, to your knowledge, would

9   that deposition form reflect that they went

10  in once and went to the lab and then came

11  out and were seen a second time?

12       A.    They only get the deposition

13  form when they're completely finished with

14  the clinic.  If they're still in the clinic

15  area for whatever reason, they don't get a

16  deposition form.

17       Q.    So, from the moment they walked

18  through this door until the moment they

19  leave that door, that's the time in and out

20  for purposes of the deposition report?

21       A.    We have to have an accurate

22  timeframe for this (indicating).

23       Q.    Okay.

24             MR. BROWN:  I'm just going to

25       call for production of that, because